1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSALYN CONLEY, et al.,

                          Plaintiffs,

          v.

KING COUNTY, DEPARTMENT OF
YOUTH SERVICES,

                          Defendant.

CASE NO. C04-5269JLR

ORDER

## I.    INTRODUCTION

This matter comes before the court on Defendant's Motion for Summary Judgment (Dkt. # 17).  Having read the papers filed in connection with this motion, and having heard oral argument, the court GRANTS Defendant's motion and dismisses Plaintiffs' case in its entirety.

## II.    BACKGROUND

Plaintiffs Josalyn Conley, Shelley Moore, and Kathy Walston ("Plaintiffs")[1] filed suit against Defendant King County Juvenile Court Services ("King County") after

---

[1]Plaintiffs are African-American and long-time King County employees who work as Juvenile Probation Counselors supervising incarcerated youth and assisting courts in adjudicating their cases.

ORDER – 1

receiving reprimands in 2000 for allegedly retaliating against another employee, Deborah Augurson.  Plaintiffs allege that King County discriminated against them based on their race and union status, retaliated against them for participating in protected union activities, and permitted a hostile work environment to exist.  King County denies these allegations and seeks summary judgment on all counts.

The factual basis for Plaintiffs' claims primarily stems from a series of events in 2000 involving multiple King County employees who filed complaints and cross-complaints against each other alleging various forms of discrimination and retaliation. Plaintiffs became involved when their co-worker and friend, Carolyn Williams, was named in one of the complaints.  While seeking to defend against the co-worker's allegations, Williams sought Augerson's help in developing a cross-complaint against the complaining co-worker for sexual harassment.[2]  Augurson refused to help Williams and as a result, Plaintiffs allegedly retaliated against her by refusing to talk with her, glaring at her, and criticizing her work.

Consequently, King County hired an independent investigator, Seattle attorney Nalani Askov, to evaluate the large number of complaints and cross-complaints being filed.  Askov interviewed the complaining parties and alleged witnesses, concluded that Plaintiffs retaliated against Augurson, and ultimately recommended that King County separate Plaintiffs and assign them to different work units.  After receiving this report, King County terminated Williams and issued letters of reprimand to Plaintiffs who challenged the letters by filing grievances with their union.[3]  Although King County later

---

[2]Augurson allegedly witnessed the complaining co-worker use inappropriate behavior toward another employee.

[3]Williams filed a separate action in this district captioned C04-5034 RBL.

ORDER – 2

agreed to remove the reprimand letters from Plaintiffs' files, it is unclear if the letters were actually removed.

In addition, Plaintiff Walston alleges that King County treated her less favorably than another white employee, Kelli Thompson, who frequently visited off-site work locations and was allowed to work from home, unlike other employees. Walston began investigating Thompson's work absences by talking to other co-workers about Thompson's professionalism and sent a memorandum detailing her absences to their immediate supervisors in mid-1999. King County began investigating Walston's conduct when Thompson filed a complaint against her and Williams alleging harassment and hostile work environment claims. Although King County concluded that Thompson's claims lacked sufficient evidence, King County issued a letter of reprimand[4] to Walston in October 1999 based on her admitted, self-initiated investigation into Thompson's work ethic and character. Walston argues that King County's decision to discipline her for investigating Thompson and to allow Thompson to work from home, constitutes discriminatory treatment.

## III.    DISCUSSION

**A.    Legal Standard**

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

---

[4]King County later rescinded Walston's letter of reprimand, issuing a letter of counseling instead.

ORDER – 3

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

**B.    Racial Discrimination**

Plaintiffs allege that King County unlawfully discriminated against them based on their race in violation of 42 U.S.C. §§ 1981 and 1983, and RCW § 49.60.180(3).[5] Although Plaintiffs have elected to pursue their employment discrimination claims under the federal civil rights statutes (rather than the federal employment discrimination statute, Title VII), the evidentiary framework articulated in McDonnell Douglas Corp. v. Green,

---

[5]Although not discussed by either party, the court notes that Plaintiffs fail to allege in their complaint, or discuss in their opposition briefing, a King County policy, custom, or practice related to the alleged discrimination. This omission is particularly troubling given that municipal liability under § 1983 is predicated on such a showing and provides grounds for dismissal. E.g., Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978); Ortez v. Washington County, 88 F.3d 804, 811 (9th Cir. 1996) (affirming dismissal of county defendant where § 1983 plaintiff failed to show that defendant's allegedly discriminatory actions flowed from a county policy, custom, or practice).

ORDER – 4

411 U.S. 792, 802-05 (1973), guides the court's review of the evidence on summary judgment. Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003) ("those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action"); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 n.11 (9th Cir. 1998) (applying same standards for disparate treatment claims under Title VII to §§ 1981 and 1983); Hill v. BCTI Income Fund-I, 23 P.3d 440, 446 (Wash. 2002) (applying McDonnell Douglas framework to state law discrimination claim).

Under the McDonnell Douglas framework, Plaintiffs bear the initial burden of establishing a prima facie case of discrimination by showing that they: (1) are members of a protected class, (2) who performed according to King County's legitimate expectations, (3) suffered an adverse employment action, and (4) were treated less favorably than other similarly situated employees outside the protected class, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.[6] Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004). The amount of proof required to establish a prima facie case "is minimal and does not even need to rise to the level of preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

After establishing a prima facie case of racial discrimination, the burden shifts to King County to produce evidence demonstrating that a legitimate, nondiscriminatory reason for the alleged adverse employment action exists.[7] McDonnell Douglas, 411 U.S.

---

[6]Although these factors differ slightly from those originally articulated in McDonnell Douglas, "it is widely recognized that the test is a flexible one." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122-23, n.17 (9th Cir. 2004).

[7]The burden of persuasion remains on Plaintiffs at all times, despite the fact that the burden of production shifts to King County at this stage. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

ORDER – 5

at 802.  Once King County satisfies this burden of production, the presumption that it

discriminated "drops from the case," and Plaintiffs must show that King County's alleged

reason for reprimanding Plaintiffs was merely a pretext for discrimination.  St. Mary's

Honor Center v. Hicks, 509 U.S. 502, 511 (1993).  A plaintiff may prove pretext either by

direct or circumstantial evidence.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

1062 (9th Cir. 2002).  Relying on circumstantial evidence to show pretext, however,

requires a plaintiff to "put forward specific and substantial evidence challenging the

credibility of the employer's motive."  Vasquez v. County of Los Angeles, 349 F.3d 634,

642 (9th Cir. 2003).

Here, Plaintiffs have failed to bring forth sufficient evidence to establish a prima

facie case of discrimination.  Although Plaintiffs reference the McDonnell Douglas

framework, they make no effort to apply the four-prong test for establishing a prima facie

case of discrimination.  Rather, Plaintiffs argue generally that "race impermissibly

permeated decisions at all levels" and provide four examples, only one of which

specifically relates to Plaintiffs.   Nonetheless, it is clear that Plaintiffs belong to a

protected class (African-American), the quality of their work was unquestioned, and that

their letters of reprimand constitute an adverse employment action.  Fonseca, 374 F.3d at

847 ("A warning letter or negative review also can be considered an adverse employment

action.").

What is unclear, however, is whether Plaintiffs were treated less favorably than

other employees outside the protected class, or if other circumstances suggest an

inference of discrimination exists.  Plaintiffs fail to bring forward any evidence

demonstrating that they were treated less favorably than other employees involved in the

ORDER – 6

melee of complaints and cross-complaints, and Plaintiffs' counsel essentially conceded that the record lacked comparator evidence at oral argument.[8]

Plaintiffs' contention at oral argument that other circumstances surrounding the reprimands give rise to an inference of discrimination, lacks merit.  The fact that King County asked Askov and other applicants for the independent investigator position, what process they would use to determine whether "racial- and sexual-harassment overtones" existed, does not mean that Plaintiffs suffered from racial discrimination.  Hawkins Decl., Exh. 12.  Further, a supervisor's comment in an internal memorandum that many of the problems in Plaintiffs' unit "appear to be demarcated across racial lines" and consequently recommending an independent investigation, does not suggest that racial discrimination existed or that Plaintiffs suffered from such discrimination.  Id., Exh. 11.  Evidence of racial tension, without more, is not equivalent to evidence of racial discrimination.  Similarly, deposition testimony from two King County employees who acknowledged hearing that racial complaints existed in Plaintiffs' unit, also fails to suggest that Plaintiffs suffered racial discrimination.  Id., Exhs. 58, 60.  Neither employee's deposition testimony contains any specific information regarding who made the complaints, what allegedly happened, or any reference to Plaintiffs.  Finally, Plaintiffs' argument that there is "absolutely nothing in the record which supports any sort of reprimand" for Moore, based on Askov's failure to name her in preliminary investigative reports, ignores Augurson's deposition testimony to the contrary, and

_____

[8]For example, there is no evidence in the record that Augurson complained about non-African-American employees retaliating against her that King County either ignored, or chose not to resolve with discipline.  Further, there is no evidence in the record that King County failed to discipline non-African-American employees charged with retaliatory behavior.

ORDER – 7

therefore fails to support an inference of discrimination.  Pls.' Opp. at 13; Goldstein Decl. at 16-17.[9]

Plaintiff Walston's additional claim that King County discriminated against her by issuing her a separate letter of reprimand a year earlier for admittedly investigating a co-worker's work ethic and character, also fails to demonstrate that King County treated her less favorably than other employees, and fails to support an inference of discrimination. Walston fails to bring forward any evidence suggesting that King County failed to discipline a white employee who, like Walston, admitted to conducting a self-initiated investigation of another employee's work performance that involved inquiries of other co-workers into the employee's work ethic and character.  Moreover, as Plaintiffs' counsel conceded at oral argument, Walston's race discrimination claim on this basis is time barred, given that the alleged discriminatory act occurred in October 1999 and Plaintiffs waited until December 2003 to file their notice of claim, and until February 2004 to file suit.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004) (applying four-year statute of limitations to § 1981 claims for wrongful termination, failure to transfer, and hostile work environment); Conway v. Standard Ins. Co., 23 F. Supp. 2d 1199, 1200-01 (E.D. Wash. 1998) (plaintiff's state law discrimination and § 1983 claims are time barred by three-year statute of limitations).

Plaintiffs' failure to bring forward evidence on the fourth element of the McDonnell Douglas framework – an essential element of a prima facie case – requires dismissal of their race discrimination claim.  Celotex, 477 U.S. at 322-23 ("a complete

---

[9]Additionally, Plaintiffs fail to bring forward any evidence suggesting that a person in a position of authority at King County made "ethnically biased remarks" of any kind, which are sufficient alone to survive summary judgment.  Fonseca, 374 F.3d at 848 (citing Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 (9th Cir. 1998)).

ORDER – 8

failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial").  Thus, the court GRANTS Defendant's motion for summary judgment on Plaintiffs' race discrimination claim.[10]

## C.   Union Discrimination and Retaliation

Plaintiffs also allege that King County unlawfully discriminated and retaliated against them based on their decision to file grievances with their union and testify in favor of Williams at her arbitration.  Plaintiffs' claims rest solely on RCW § 49.32.020 which affords union and non-union employees the substantive right to be free from "interference, restraint, or coercion . . . in other concerted activities for the purpose of collective bargaining or other mutual aid or protections."  Am. Compl. at ¶¶ 5.2-5.4; Pulcino v. Fed. Express Corp., 9 P.3d 787, 798 (Wash. 2000); Bravo v. Dolsen Co., 888 P.2d 147, 151-52 (Wash. 1995).  Washington courts have broadly defined "concerted activities" to include "the act of joining, belonging to, or voting against decertification of a labor union."  Pulcino, 9 P.3d at 798-99.  Similarly, Washington courts have broadened the definition of prohibited "interference, restraint, or coercion" beyond discharge to include a "wide range of actions," such as "threatening strikers with dismissal, intimidating strikers by videotaping their picket line, terminating those who participated,

_____

[10]Even assuming Plaintiffs have brought forth sufficient evidence to establish a prima facie case of discrimination, King County has rebutted such showing with evidence that it issued letters of reprimand based on Askov's (an independent investigator) conclusions that Plaintiffs retaliated against Augurson and disciplined Walston based on her admitted, self-initiated investigation of a co-worker.  Plaintiffs have not brought forth "specific" or "substantial" evidence challenging the credibility of King County's motives, by showing that its actions were either internally inconsistent or otherwise not believable, as required to show pretext.  Vasquez, 349 F.3d at 642; Fonseca, 374 F.3d at 849.

ORDER – 9

discouraging former strikers from seeking reemployment, and denying reinstatement to former strikers who asked to return to available jobs." Bravo, 888 P.2d at 153.[11]

Here, Plaintiffs' grievances and testimony at Williams' arbitration likely qualify as "concerted activities" under Washington courts' broad interpretation of that phrase, but the adverse employment actions they allegedly suffered fall far short of the activities that Washington and federal courts have recognized constitute "interference, restraint, or coercion." Without citing any case authority for their position, Plaintiffs contend that King County retaliated against them, in violation of RCW § 49.32.020, by (1) failing to remove Moore and Conley's letters of reprimand from their supervisor's file, (2) failing to remove Walston's letter of reprimand from her main personnel file, (3) advising Conley and Moore to "write up" an interaction with Augurson, (4) issuing Moore a letter of reprimand for discourteous treatment of other employees a short time after testifying at Williams' arbitration, and (5) limiting Moore's time in the lunch room after she successfully grieved her letter of reprimand. Drawing all inferences in the light most favorable to Plaintiffs, as the court must on summary judgment, the court finds that none of these actions separately, or in the aggregate, constitute "interference, restraint, or coercion" under the case law. The limited number of Washington cases interpreting RCW § 49.32.020 have prohibited employers from dismissing (or threatening to dismiss)

---

[11] Washington courts' construction of "interference, restraint, or coercion" is consistent with federal courts' interpretation of the parallel provision contained in the National Labor Relations Act. Bravo, 88 P.2d at 153 (citing Hajoca Corp. v. Nat'l Labor Relations Bd., 872 F.2d 1169, 1177 (3d Cir. 1989) (threatening workers with dismissal) and Nat'l Labor Relations Bd. v. Pizza Crust Co. of Penn., Inc., 862 F.2d 49, 51 (3d Cir. 1988) (coercive questioning of workers)); see also Bachelder v. Amer. West Airlines, Inc., 259 F.3d 1112, 1123 (9th Cir. 2001) (reviewing case law and recognizing that awarding preferential seniority rights to striker replacements, threatening to shut down a plant, and conducting surveillance of employees meeting with union organizer outside work constitute "interference, restraint, or coercion").

ORDER – 10

employees for union activity, refusing to reinstate striking employees, and intimidating strikers by videotaping their union activity.  E.g., Bravo, 888 P.2d at 153.  None of the activity complained of by Plaintiffs resembles this activity and Plaintiffs provide no authority warranting such an extension.  Thus, the court GRANTS Defendant's motion for summary judgment on Plaintiffs' "union discrimination" claim.[12]

**D.      Hostile Work Environment**

Plaintiffs allege that King County has permitted a hostile work environment to exist with "lasting effects" on all of them.  Pls.' Resp. at 18.  Plaintiffs contend that they feel nervous, afraid, and uncomfortable at work based on King County's alleged anti-union discrimination.  Although cast as a "hostile work environment claim," Plaintiffs appear to allege a general claim for emotional distress, rather than a typical hostile work environment claim under Title VII.[13]  Plaintiffs dedicate one page of their opposition brief to this claim, none of which discusses the Title VII standard, attempts to apply another standard, or cites any case or statutory authority.  Consequently, the court construes Plaintiffs' "hostile work environment" claim as one for general emotional distress stemming from the alleged union discrimination and GRANTS Defendant's motion for

---

[12] While King County's alleged adverse employment actions might constitute retaliation under Title VII, Plaintiffs filed their "union discrimination" claim solely under RCW § 49.32.020.  See 42 U.S.C. § 2000e-3(a) (Title VII retaliation provision);  Raad v. Fairbanks N. Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003) (establishing elements of a prima facie retaliation case under Title VII).

[13] To survive summary judgment on a hostile work environment claim based on race or sex under Title VII, a plaintiff must show "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."  Vasquez, 349 F.3d at 642; Washington v. Boeing Co., 19 P.3d 1041, 1048 (Wash. Ct. App. 2000) (establishing substantially the same test under Washington law).

ORDER – 11

1  summary judgment based on the court's prior dismissal of Plaintiffs' union discrimination

2  claim.

3                                   **IV.   CONCLUSION**

4          For the reasons stated above, the court GRANTS Defendant's motion for summary

5
   judgment (Dkt. # 17) dismissing Plaintiffs' claims in their entirety and directs the clerk to
6
7  enter judgment accordingly.

8          Dated this 24th day of August, 2005.

9

10                                          _____
11
                                            JAMES L. ROBART
12                                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 12